H1IQPOWa

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3
                v.                        17 CR 40 (AJN)
4                                         Arraignment
    JONATHAN POWELL
5
                    Defendant
6   ------------------------------x

7                                         New York, N.Y.
                                          January 18, 2017
8                                         12:00 p.m.

9
    Before:
10
                        HON. ALISON J. NATHAN
11                                        District Judge

12
                            APPEARANCES
13
    PREET BHARARA
14       United States Attorney for the
         Southern District of New York
15   CHRISTOPHER DiMASE
         Assistant United States Attorney
16
    LAW OFFICE OF LONDON & ROBIN
17       Attorney for Defendant
    AVROM J. ROBIN
18
    -Also Present-
19   CHRISTOPHER MERRIMAN, Special Agent (FBI)

20   PETER CASSON, Special Agent (FBI)

21

22

23

24

25

H1IQPOWa

1             (In the robing room; video arraignment)

2             THE COURT:  Good afternoon.  This is 16-MJ-7004,

3    United States v. Jonathan Powell.

4             I will take appearances beginning with the government.

5             MR. DiMASE:  Yes.  Good afternoon, your Honor.

6    Christopher DiMase for the government.  Also present with me

7    here is FBI Special Agent Christopher Merriman.

8             THE COURT:  Good afternoon to you both.

9             For the defendant.

10            MR. ROBIN:  Avrom Robin for Jonathan Powell.

11   Mr. Powell is appearing vie Skype from the law office of his

12   mother, Sarah Powell, in Phoenix, Arizona for purposes of this

13   arraignment.

14            THE COURT:  Good afternoon, Mr. Robin.

15            And good afternoon, Mr. Powell.

16            THE DEFENDANT:  Good afternoon.

17            THE COURT:  So beginning with the appearance by video

18   conference, I have a waiver of appearance signed by Mr. Powell.

19            Mr. Robin and Mr. Powell, I do just want to confirm

20   that you signed this waiver of appearance on January 13.  Is

21   that correct?

22            THE DEFENDANT:  Yes, it is.

23            THE COURT:  And you read it before you signed it?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  And discussed it with your attorney before

1    you signed it?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  To the extent that you do have a right to

4    be here in person today, you are willing to waive that right

5    and appear by video conference?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  If at any point, Mr. Powell, you have

8    difficulty with the technology, you can't hear what's going on

9    in any way, please let me know, wave your arms, whatever it

10   takes.  I do want to make sure that you hear and understand

11   everything that's happening here today.  OK?

12             THE DEFENDANT:  OK.  Just tilt the screen down a

13   little bit would be the only thing.  Thank you.

14             THE COURT:  Are you able to see me now, Mr. Powell?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Great.  And you are having no difficulty

17   hearing.  Is that right?

18             THE DEFENDANT:  No, not at all.

19             THE COURT:  So we are here, Mr. DiMase, for a waiver

20   of indictment, and then an arraignment on the information.  Is

21   that correct?

22             MR. DiMASE:  Yes, your Honor.

23             THE COURT:  And then a scheduling conference.

24             MR. DiMASE:  Correct.

25             THE COURT:  I want to turn first to the information,

H1IQPOWa

1      Mr. Powell.  That's the document that contains the charges

2      against you.  Do you have a copy of that?

3                THE DEFENDANT:  Yes, ma'am.

4                THE COURT:  Have you had an opportunity to read it?

5                THE DEFENDANT:  Yes, ma'am.

6                THE COURT:  You understand that this document that

7      contains the charges against you is called an information, and

8      that it's been issued by the United States Attorney.  Do you

9      understand that?

10                THE DEFENDANT:  Yes.

11                THE COURT:  You do have a constitutional right to

12     require the government to present evidence to a grand jury to

13     see whether the grand jury would vote to charge you with this

14     crime.  Do you understand that?

15                THE DEFENDANT:  Yes, ma'am.

16                THE COURT:  And you understand what a grand jury is?

17                THE DEFENDANT:  Yes, ma'am.

18                THE COURT:  If the grand jury charges you with this

19     crime, the charge would be contained in an indictment rather

20     than an information.  An indictment would be signed by the U.S.

21     Attorney and grand jury foreperson.  Do you understand that?

22                THE DEFENDANT:  Yes, ma'am.

23                THE COURT:  I do have a waiver of indictment form here

24     that is dated January 18, 2017.  I'm showing you -- can you see

25     the document, Mr. Powell?

H1IQPOWa

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  You have the original there with you.  Is

3    that correct?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Did you sign this today?

6              THE DEFENDANT:  I signed it last night.

7              THE COURT:  Did you read it before you signed it?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Did you discuss it with your lawyer before

10   you signed it?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  You understand that you are under no

13   obligation to waive indictment?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  You understand that when you signed this

16   form, you were acknowledging your willingness to give up your

17   right to be indicted by a grand jury.  Do you understand that?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Mr. Robin, am I correct that you witnessed

20   this waiver of indictment as well as someone who is present

21   with Mr. Powell.  Is that correct?

22             MR. ROBIN:  Yes, your Honor.  I signed it separately

23   and PDF'd it to Mr. Powell.

24             THE COURT:  Who is the witness?

25             MR. ROBIN:  The witness is a relative of Mr. Powell's

H1IQPOWa

1  mother.

2         THE COURT:  And she is present in the --

3         MR. ROBIN:  She was present when he signed it.

4         THE COURT:  Is that correct, Mr. Powell, of

5  Mr. Robin's understanding.

6         THE DEFENDANT:  Yes, ma'am.

7         THE COURT:  I authorize -- counsel, are you concerned

8  with the witness?

9         MR. DiMASE:  Just for the record, two things.  FBI

10  Special Agent Peter Casson has also joined us.

11         AGENT CASSON:  Good afternoon.

12         MR. DiMASE:  Second, if we could confirm -- I don't

13  expect this to be an issue -- but the name of the individual.

14  I don't know if it can be deciphered from the signature on that

15  form or not, of the witness.

16         THE COURT:  Do you know, Mr. Robin, the name of the

17  witness.

18         MR. ROBIN:  I'm not sure of her full name.

19  Mr. Powell, the name of the witness who signed?

20         THE DEFENDANT:  Her name is Robin Cohen, C-O-H-E-N.

21         THE COURT:  Robin, R-O-B-I-N?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Thank you.

24         MR. DiMASE:  Thank you, your Honor.

25         THE COURT:  I should also just establish competency to

H1IQPOWa

1    waive.  Mr. Powell, I am going to ask you a few questions and I

2    will place you under oath for that.

3            (Defendant sworn)

4            THE COURT:  I should make clear to you, Mr. Powell,

5    even though you're joining by video conference, if at any point

6    you do want to ask a question of your attorney and do so in

7    confidence and in private, you just let me know, and you are

8    more than welcome to do that at any time.  OK?

9            THE DEFENDANT:  OK.  Thank you.

10           THE COURT:  What is your full name?

11           THE DEFENDANT:  Jonathan Cohen Powell.

12           THE COURT:  How old are you?

13           THE DEFENDANT:  I am 29 years old.

14           THE COURT:  How far did you go in school?

15           THE DEFENDANT:  I completed my bachelor's of

16   accountancy, and then I took my Master of taxation.

17           THE COURT:  Have you ever been treated for any kind of

18   mental illness?

19           THE DEFENDANT:  No, ma'am.

20           THE COURT:  Are you now or have you recently been

21   under the care of a psychiatrist?

22           THE DEFENDANT:  No, ma'am.

23           THE COURT:  How about a doctor rather than regular

24   checkups?

25           THE DEFENDANT:  I'm currently seeing a therapist right

H1IQPOWa

1    now about the incidents, and I was also court ordered as well

2    and voluntary as well.

3              THE COURT:  Are you taking any medication related to

4    that?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT:  Have you ever been treated for any type of

7    addiction including drug or alcohol addiction?

8              THE DEFENDANT:  No, ma'am.

9              THE COURT:  Have you taken any drugs, pills, medicine

10   or alcoholic beverages in the past two days?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Your mind is clear today?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  And you understand what's happening here

15   today?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Does either counsel have any doubt as to

18   Mr. Powell's competence to waive prosecution by indictment?

19             MR. DiMASE:  No, your Honor, I don't.

20             MR. ROBIN:  No.  For the defense, no.

21             THE COURT:  Thank you.

22             Based on my observations of Mr. Powell through the

23   video conference, his answers to my questions and

24   representations of counsel, I do find him competent to waive

25   indictment, and I do authorize the filing of the information.

H1IQPOWa

1          Returning to the information, Mr. Powell, I think you

2     said you had an opportunity to read it.  Is that correct?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Have you had some time to discuss it with

5     your attorney?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  You have a right for me to read the

8     information to you or you can waive the public reading.  Do you

9     waive the public reading?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  How do you plead to the charges?

12          THE DEFENDANT:  Not guilty.

13          THE COURT:  All right.  Thank you.

14          Turning to the scheduling conference -- well, let me

15     begin with you, Mr. DiMase.

16          MR. DiMASE:  Yes.

17          THE COURT:  If you would just summarize the charge in

18     the information and describe the categories of discovery that

19     the government will produce, and we will talk about a schedule

20     for that and a schedule for the case going forward.

21          MR. DiMASE:  Yes, your Honor.  I will do this with an

22     eye toward explaining the basis for our scheduling request

23     here.

24          This case began with an investigation into intrusion

25     of ███████████ in particular or a university located here

1    in New York.  And, actually, I may ask after the conference is

2    over to make that particular portion of the record sealed.

3         THE COURT:  Just as a pause, that reminds me that I

4    did want to say I recognize the universities to the extent they

5    are victims are unnamed in the indictment.

6         MR. DiMASE:  Right.

7         THE COURT:  I wanted to confirm if either of them was

8    New York University?

9         MR. DiMASE:  No, your Honor.

10        THE COURT:  Then we can proceed.  I say that only

11   because I teach at NYU, and I would want to make disclosures

12   related to that if they were.

13        MR. DiMASE:  I may need a moment to check with the

14   agents because I will get to in a moment the investigation has

15   expanded beyond the original victim school, so there is some

16   possibility that --

17        AGENT:  So far no.

18        MR. DiMASE:  So, it sounds like so far NYU has not

19   been identified as a victim university.

20        In any event, there was a New York area university

21   that was identified as the initial victim.  The IP address

22   which identified the computer that was conducting the intrusion

23   into the New York University systems came back to a computer

24   located at Mr. Powell's place of employment in Arizona.

25   Subsequent investigation revealed that it was in fact

H1IQPOWa

1    Mr. Powell using the device at his place of employment to

2    compromise the New York University systems, and essentially

3    what it shows is that Mr. Powell was gaining unauthorized

4    access to email accounts of students, staff and others of the

5    New York University system by resetting passwords using the

6    university's password reset utility.  Once Mr. Powell gained

7    access to those accounts, he then used those accounts as a

8    jumping-off point to compromise other linked accounts, for

9    example, Facebook, Apple iCloud, iTunes, Dropbox, as a few

10   examples.  He would essentially log into the other connected

11   account, have a password, reset emails sent to the university

12   account that he had compromised and used that email link to

13   reset the password for the connected account and then gain

14   access to the connected account.  I know it's a little

15   confusing.  Does that all make sense to you?

16            THE COURT:  I'm with you.

17            MR. DiMASE:  Very good.  Ultimately it was determined

18   that the motive for doing this was to download sexually

19   explicit photographs and videos of women, whether from the

20   women's accounts, and in some cases men's accounts, who were

21   either dating or had some intimate relationship with the women.

22   We have been investigating whether there were other motives.

23   At least to date we have not found any other motives, for

24   example, a financial motive to compromise personal identifying

25   information in order to set up credit card accounts, things of

that nature, although we are continuing to investigate that
possibility.

More importantly, subsequent investigation has
demonstrated based on an analysis of Mr. Powell's devices which
he actually consented to the search of, that it's two tablets
where he worked had connected to a massive number of
universities all over the country, some of which we were
already aware of, others of which we learned about from the
analysis of those devices.  There are a subset of universities
which Mr. Powell appears to have focused on and so we have made
it a priority to communicate with those schools.  There are
additional universities where there was less contact, and it's
our view that we have an obligation to at least notify those
schools and get some sense of level of intrusion on each
individual school.  It's not necessarily clear from the
evidence we have whether Mr. Powell actually compromised an
email at a school.  That's something we need to rely on the
school to tell us.  We can only see he accessed their password
log-in portal, their student directory, things that suggest he
was trying.  So we have definitely gotten some point along the
way in that process, but it is time-consuming given the number
of universities.  So that is why we are asking for a 90-day
period to have a status conference.

I would say, I think both parties believe that this
case is very likely to resolve with a plea or some sort of

H1IQPOWa

pretrial disposition.  Mr. Powell has cooperated in the form of

consenting to the search of his devices and also attending

several proffer sessions with the government very early on in

the case.  But as far as discovery, a lot of it will consist of

those results in forensic analysis on the devices that we

searched, records from the various victim universities that

will show IP logs, other evidence of Mr. Powell's computers

connecting to their networks, and logs showing, where

applicable, compromised particular email accounts, and in some

cases, to the extent the university has information about it,

where Mr. Powell went next after compromising the email

account.

There would also be the category of evidence relating

to his employment at the company in Arizona, employment

records, forensic data from their side as well.  I think there

are some sort of miscellaneous discovery items like phone

records and bank account records that we've collected in the

course of our investigation as well.

Finally, I should note that Mr. Powell outside of the

proffer sessions I mentioned, he did also give a full post

Miranda, post arrest statement in this case.

THE COURT:  Has that been produced yet, or no?

MR. DiMASE:  Nothing has been requested by way of

discovery to date, your Honor, and nothing has been produced.

I certainly would not have any objection, even if there isn't a

H1IQPOWa

1   broader discovery request, to producing that to the defense in

2   short order.

3            I think this may be a case where the defendant doesn't

4   necessarily ask for a full discovery production given the

5   circumstances as we continue to work toward a resolution, but

6   we can obviously address that by communicating with one

7   another.  Obviously, if Mr. Robin has anything to add on these

8   points, he should be heard.  That's some sense of where we

9   stand.

10           THE COURT:  So the government's proposal -- can you

11  see me, Mr. Powell?

12           THE DEFENDANT:  Yes, ma'am.

13           THE COURT:  So the government's proposal would be to

14  only set a 90-day status conference control date and set,

15  obviously, not a trial date -- the request is not to set a

16  trial date, not to set a motions date, but what about a date

17  for discovery completion in the event that the defense is

18  seeking the full gamut of discovery?

19           MR. DiMASE:  May I turn the computer towards me, your

20  Honor?

21           THE COURT:  Yes.

22           MR. DiMASE:  Mr. Robin and I did discuss this briefly

23  beforehand, although not in great detail.  I guess my

24  preference would be to allow the parties in the 90 days, if the

25  Court is willing to grant us that period, to work out those

H1IQPOWa

1   discovery issues.  And if at the end of 90 days it's clear that

2   there isn't going to be a resolution and there's still

3   additional discovery that hasn't been produced, on consent of

4   both parties to set a full and complete discovery deadline at

5   that point.  Again, I defer to Mr. Robin to provide his view on

6   that as well.

7          THE COURT:  I will hear from Mr. Robin.

8          MR. ROBIN:  I'm in agreement with Mr. DiMase.  We have

9   a very open line of communication on this.  I don't have any

10  problems or road bumps at all.  I anticipate we are going to

11  proceed that way, and for the defense we anticipate this will

12  be a plea case.  I'd say that's pretty clear at this point.  So

13  I think the time that between now and 90-day control date would

14  be useful.  We need that amount of time, especially, because as

15  Mr. DiMase is telling us now, the investigation is still

16  ongoing.  So it would be impossible to set a guideline range

17  without knowing the full scope of the crime.

18         MR. DiMASE:  Your Honor, may I be heard briefly on two

19  additional points?

20         THE COURT:  Yes.

21         MR. DiMASE:  With respect to discovery, I neglected to

22  mention two additional counts.  A Yahoo account and a Dropbox

23  account that Mr. Powell also consented to the search of by the

24  government.  So in addition to the forensics analysis of the

25  devices, there would also be data recovered from those

H1IQPOWa

1     accounts.

2              The second point I wanted to make was that the current

3     information mirrors the charge that was contained in the

4     criminal complaint 16 MJ 7004.  This charge pertains to the New

5     York area university only.  And so one question that will have

6     to be addressed in terms of how this case is resolved is what

7     to do with respect to the other universities that are

8     identified as victim universities, whether those are covered by

9     additional Section 1030 charges, whether the Court would

10    consider them as relevant conduct.  So I do agree with

11    Mr. Robin that the first order of business is to conclude the

12    investigation and determine the number and scope of the victims

13    here, and then the question, I think, that has to be resolved

14    between the parties is how to account for that conduct.  As I

15    said, as of now, there's one simple Section 1030 charge.

16             There are also some legal issues regarding venue when

17    it comes to computer intrusions and on what grounds venue can

18    be based.  This particular university does have servers located

19    in the Southern District of New York, so there is no question

20    that to the extent the allegations are proven that the venue

21    would be proper here.  The majority of the schools, if not all

22    of them -- I think there may be a few other New York area

23    schools we have identified, but the majority are not in New

24    York nor are their servers in New York.  So, maybe relevant

25    conduct is one way to address that, but I think that is

H1IQPOWa

1    something else the parties will need to address as we sort out

2    how to resolve the case.

3            THE COURT:  Well, as counsel knows, my default rule is

4    to set the full schedule for the case at the initial

5    conference.  There's a number of reasons for doing it that way

6    which I won't go into, but I am not inflexible, and so I will

7    deviate from that on consent here and put the case essentially

8    on no schedule other than a 90-day control date which brings us

9    to April 13, 2017, and I'm asking for it to be at 2:00 p.m. OK?

10           MR. ROBIN:  That's fine.  We consent to that.  We

11   appreciate your Honor's going outside of her usual rules in

12   this case, which is a little unusual because it's still ongoing

13   to a large extent.  I will put on the record now that if

14   April 13 is just a status conference, if we could waive

15   Mr. Powell's appearance so he could continue working full time

16   where he is in Arizona, it's just a procedural conference.

17           THE COURT:  Mr. DiMase.

18           MR. DiMASE:  Judge, to the extent that it is a

19   conference that relates to logistics, I don't have an objection

20   to that.  If there comes a time in this case that obviously

21   there's any kind of guilty plea proceeding or a trial and a

22   sentencing of any kind, I think Mr. Powell should be present

23   for those proceedings; but with just standard pretrial

24   conferences, this seems to work well, instead of having to find

25   a flight each way, and I don't have an objection to Mr. Powell

H1IQPOWa

1    appearing by video conference.

2           MR. ROBIN:  I would like to note for the record the

3    push for video was more by me than Mr. Powell.  He was willing

4    to get on an airplane.  I just thought it was not necessary in

5    these circumstances.

6           THE COURT:  All right.  So I will set April 13, 2017

7    at 2:00 p.m. as a conference date.  My presumption is it will

8    be simply a scheduling and procedural conference without any

9    substance dealt with.  I will ask you to come into that

10   conference at that point even if your investigation and

11   negotiations are ongoing, with a hopefully agreed-upon schedule

12   for the case at that point to be sure that we do keep the case

13   moving as is required.

14          I will ask you to have met and conferred in advance

15   and discussed a schedule for the completion of production of

16   discovery, a motion schedule and a proposed trial month or so.

17   You can confer with my deputy at the conference in advance as

18   to the Court's availability so that if we are setting a

19   schedule at that conference, we don't have to spend a lot of

20   time looking at calendars but can just put the schedule in

21   place, but I presume as I sit here that on April 13 we will set

22   a full schedule for the case.

23          Mr. Powell, to the extent that that conference is

24   simply a scheduling conference, I see no problem with your

25   knowingly waiving whatever right you have to appear in person

H1IQPOWa

1    at that conference, and I'm open to conducting it via video

2    conference again since it does seem to be working.  You can

3    discuss that issue with your lawyer and make a decision as to

4    whether you want to be here in person or to submit a waiver as

5    you did in this case.  OK, Mr. Powell?

6            THE DEFENDANT:  OK.  Thank you.

7            THE COURT:  All right.  So, applications.

8            MR. DiMASE:  I do have an application to exclude

9    speedy trial time, but if you'd give me just one moment, your

10   Honor, I want to check with the agents about one other

11   question.

12           THE COURT:  Yes.

13           (Pause)

14           MR. DiMASE:  Yes, your Honor.  I was discussing the

15   issue of the New York University area and I am asking for that

16   portion of the transcript to be sealed.  To the extent the

17   government believes that that is --

18           THE COURT:  Just a moment.

19            (Off the record)

20           MR. DiMASE:  Thank you, your Honor.  To the extent the

21   government thinks that is necessary, we will submit something

22   to the Court.  I'm not going to make that application now.

23           THE COURT:  So no application to seal the transcript

24   at this point, but you may seek to redact the name.

25           MR. DiMASE:  If your Honor would be willing to rule on

H1IQPOWa

1   a request just to redact the name of the university and with

2   consent of the defense.

3                MR. ROBIN:  Yes.

4                MR. DiMASE:  I think that would resolve any concern

5   the government would have.

6                THE COURT:  On consent, we will redact the name of the

7   university that was stated.  And you've indicated it's not NYU.

8                MR. DiMASE:  That's correct, your Honor.

9                THE COURT:  No need to redact NYU then.

10               MR. DiMASE:  No, your Honor.

11               THE COURT:  Let me just go ahead and make my

12  disclosure on that in the event since you're still

13  investigating and then you have the information.  I teach a

14  class at NYU as an adjunct.  My spouse is a tenured faculty

15  member at NYU law school.  As a result of my adjunct position,

16  I have an email address that's an NYU address.  Obviously, my

17  spouse does.  I live in NYU housing.  So, I have a number of

18  affiliations with NYU.  Even if NYU were an entity in this

19  case, as I sit here I don't see a problem, but I do want to

20  make the disclosure in the case either side has any concerns.

21               Let me just say if at some point you learn of NYU's

22  involvement in any way, obviously, you'd let defense counsel

23  know as soon as you possibly could, and I would just ask,

24  Mr. Robin, that within two weeks of learning that information,

25  you make any application if you have any concerns with respect

H1IQPOWa

1    to that.

2            MR. ROBIN:  That's fine, Judge.

3            MR. DiMASE:  I think we can also make it a priority to

4    look into that quickly and make sure there isn't an issue.

5            So, we do have an application, your Honor, to exclude

6    speedy trial time from now until April 13 of 2017 to allow the

7    government to produce any discovery that is requested during

8    that period by the defense, to continue to discuss a potential

9    pretrial resolution of the case with the defense, and for the

10   defendant to consider any pretrial motion defendant might wish

11   to file after the April 13 control date.

12           THE COURT:  Mr. Robin.

13           MR. ROBIN:  Yes.  No objection.

14           THE COURT:  I do find the ends of justice served by

15   granting the solution from speedy trial computations from the

16   period of today's date until April 13, 2017 outweigh the

17   interest of the public and the defendant in a speedy trial as

18   the time is necessary for production of discovery if requested

19   by the defense, a review of that discovery, time for the

20   parties to continue their discussions toward pretrial

21   resolution of the case, as well as time for the defense to

22   consider any pretrial motions.

23           Mr. Robin, any applications from the defendant?

24           MR. ROBIN:  No, Judge.  Nothing further.

25           THE COURT:  Counsel, anything else I can address

H1IQPOWa

1  today?

2           MR. DiMASE:  No, your Honor.  Thank you.

3           THE COURT:  Mr. Powell, just to confirm that from your

4  perspective you were able to hear and understand everything

5  that went on in the proceeding.

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Terrific.  I'm glad it worked out.  So

8  we're adjourned.  Thank you.

9           MR. DiMASE:  Thank you, Judge.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25